IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Blue Cross and Blue Shield of Georgia, Inc., *et al.*,<br><br>      Plaintiffs,<br><br>v.<br><br>DL Investment Holdings, LLC f/k/a Durall Capital Holdings, LLC d/b/a Chestatee Regional Hospital, Reliance Laboratory Testing, Inc., Medivance Billing Service, Inc., Aaron Durall, Jorge Perez, and Neisha Carter Zaffuto,<br><br>      Defendants. | Civil Action No. 1:18-cv-01304-MLB |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
HOSPITAL DEFENDANTS' MOTION TO COMPEL ARBITRATION AND
DISMISS ALL CLAIMS AGAINST THE HOSPITAL DEFENDANTS, OR IN
THE ALTERNATIVE STAY PROCEEDINGS**

## INTRODUCTION

For the past seven months, Defendants DL Investment Holdings, LLC f/k/a Durall Capital Holdings, LLC ("Durall Capital"), Reliance Laboratory Testing, Inc. ("Reliance"), Medivance Billing Service, Inc. ("Medivance"), Aaron Durall, and Neisha Carter Zaffuto (collectively, the "Hospital Defendants") actively litigated this case, *never once* arguing that Plaintiffs' claims in the Second Amended Complaint ("SAC") should be arbitrated. Instead, the Hospital Defendants tried to move claims from a parallel arbitration *into this proceeding*. But that changed after the Court ordered the Hospital Defendants to produce records necessary to trace the funds at issue in this case, in anticipation of a renewed motion to freeze those assets. Now, perhaps to get out from under the Court's discovery orders, and without any explanation for their change-of-heart, the Hospital Defendants contend that *all* of Plaintiffs' claims in the SAC must be arbitrated. But their legal argument is flawed and their conduct in this case has waived any right to insist that the claims be arbitrated.

Plaintiffs have three contracts with Durall Capital. The PPO Contract contains an arbitration provision. The other two—the HMO and PAR Contracts—do not. Plaintiffs have no contracts with the other Defendants.

Defendants implemented a scheme premised on the submission of fraudulent claims to Plaintiffs under each of the PPO, PAR, and HMO Contracts, ultimately causing Plaintiffs more than $100 million in damages. To ensure that they could recover their damages from each of the Defendants, Plaintiffs: (1) filed an arbitration demand against Durall Capital for amounts paid under the PPO Contract, as required by the PPO Contract; and (2) initiated this lawsuit to recover all other amounts, including (a) from Durall Capital for amounts paid under the HMO and PAR Contracts and (b) from Reliance, Medivance, Aaron Durall, Neisha Carter Zaffuto, and Jorge Perez for the amounts they caused Plaintiffs to pay under each of the PPO, PAR, and HMO Contracts.

The Hospital Defendants' request to the Court is extraordinary. They ask the Court to use an arbitration provision in the PPO Contract—to which only Durall Capital and Plaintiffs are signatories—and hold that the provision *requires* Plaintiffs to arbitrate: (a) against Reliance, Medivance, Aaron Durall, and Zaffuto for amounts they caused Plaintiffs to pay under the PPO Contract, even though they are not signatories; (b) against Durall Capital for amounts it caused Plaintiffs to pay under the HMO and PAR Contracts, even though neither contains an arbitration provision; and (c) against Reliance, Medivance, Aaron Durall, and Zaffuto for the amounts they caused Plaintiffs to pay under the

2

HMO and PAR Contracts, even though neither has an arbitration provision and these Defendants are not signatories. They would leave Plaintiffs to litigate their claims against Jorge Perez, another non-signatory who has not moved to compel. The Hospital Defendants provide no rationale for this, other than the claims are "so interrelated that they . . . should be referred to arbitration."

The Hospital Defendants' Motion to Compel Arbitration (the "Motion") should be denied. *First*, the Hospital Defendants waived any right to compel arbitration by repeatedly seeking to consolidate Plaintiffs' claims into this suit and actively litigating for seven months. *Second*, the arbitration provision in the PPO Contract does not provide a legal basis to compel Plaintiffs to arbitrate the claims in the Second Amended Complaint. Finally, the Hospital Defendants' attempt to invoke *equitable* estoppel is inappropriate, given the inconsistent positions they have taken and their apparent motivation for this Motion.

## PROCEDURAL BACKGROUND

### I.    The Fraudulent Scheme

Immediately after taking ownership of Chestatee Regional Hospital[1], Defendants began using the hospital as a shell through which they billed

---

[1] For the remainder of this brief, "Chestatee" refers to the hospital in Dahlonega, Georgia. "Durall Capital" refers to Defendant DL Investment Holdings, LLC f/k/a Durall Capital Holdings, LLC, the entity that owned Chestatee Regional Hospital at all relevant times.

Plaintiffs for laboratory tests that were actually performed by Reliance Labs. (*See* Dkt. 28 ¶¶ 1, 7.) They implemented their fraudulent scheme because Chestatee's contracts with Plaintiffs entitled it to substantially more for the tests than Reliance Labs would receive directly. (*Id*. ¶ 9.) Defendants' scheme was monumentally successful: they caused Plaintiffs to pay them more than $100 million for the laboratory tests in about one year. (*Id*.¶ 116.)

## II.   The Contracts

Since 1998, BCBS Georgia's relationship with Chestatee has been governed by three contracts: (1) the PAR Contract (*Id.,* Ex. A); (2) the HMO Contract (*id.,* Ex. B); and (3) the PPO Contract (*id.,* Ex. C). On August 19, 2016, Durall Capital purchased Chestatee, and the three contracts were assigned to Durall Capital by Chestatee's previous owner. (Dkt. 28 ¶ 86.) At all relevant times, the only signatories to the three contracts were BCBS Georgia and Durall Capital. (*Id*.)

The PPO Contract contains a dispute-resolution provision requiring that BCBS Georgia and Durall Capital confer in good faith to resolve "any problems or disputes that may arise under" the PPO Contract. (*Id.,* Ex. A at § 10.1.) If not resolved through the conferral process, BCBS Georgia and Durall Capital were required to arbitrate. (*Id*. § 10.2.) Neither of the other two contracts (HMO and PAR) includes an arbitration provision. (*Id.,* Exs. B & C.)

4

### III.    Plaintiffs' Efforts to Compel Arbitration under the PPO Contract

On November 9, 2017, BCBS Georgia sent a letter demanding that Durall Capital confer regarding their laboratory billings. (Moore Decl., Ex. 1.) Durall Capital did not respond for two months, and then refused to address the allegations. (*Id.*, Ex. 2.) On February 5, 2018, BCBS Georgia filed a Demand for Arbitration (the "Demand") *only* against Durall Capital with the American Arbitration Association ("AAA"). (*Id.*, Ex. 3.)

The Demand stated explicitly that the arbitration was limited to amounts paid under the PPO Contract, *but not* amounts paid under the HMO or PAR Contracts. (*Id.*, Ex. 3 at ¶¶ 13-14, 26-50.) It also stated: "The [PPO] Contract is one of three . . . contracts in effect between BCBS Georgia and [Durall Capital.] The other two contracts are not at issue in this arbitration." (*Id.*, Ex. 3 at ¶ 29.)

On February 7, 2018, the AAA noted that the PPO Contract's arbitration provision required arbitration under the rules of the "American Arbitration Society" (the "AAS"), rather than the AAA, and requested that the parties consent to submitting the dispute to the AAA. (*Id.*, ¶ 5 & Ex. 4.) BCBS Georgia repeatedly requested that Durall Capital consent. (*Id.*, Ex. 4.) Durall Capital refused, arguing that the AAS and the AAA were distinct entities and that the parties did not intend to arbitrate before the AAA. (*Id.*, ¶ 5 & Exs. 4–5.)

5

On February 21, 2018, Durall Capital demanded that BCBS Georgia agree to two conditions before Durall Capital would submit the dispute to the AAA: (1) that BCBS Georgia waive the AAA's requirement that arbitrators be neutral and independent; and (2) that BCBS Georgia arbitrate *all* claims against Durall Capital, including those under the HMO and PAR Contracts, even though they were not subject to an arbitration provision. (*Id.*, Ex. 5.) BCBS Georgia rejected these conditions and conveyed that it would seek an order compelling Durall Capital's participation in an arbitration before the AAA. (*Id.*, Ex. 6.)

The next day, Durall Capital filed a six-page petition to compel arbitration in Georgia state court. (*Id.*, Ex. 7.) BCBS Georgia removed the petition to the District Court for the Northern District of Georgia (*id.*, Ex. 8), and filed its own petition and motion to compel arbitration (*id.*, Ex. 9.) The proceeding was assigned to Judge Ross (the "Arbitration Proceeding").[2]

## IV. Plaintiffs Begin the Fraud Suit

The HMO and PAR Contracts do not contain arbitration provisions, so BCBS Georgia did not and could not require Durall Capital to arbitrate the amounts paid under those contracts. (Dkt. 28, Exs. B & C.) BCBS Georgia also identified other parties responsible for the scheme, who were *not* signatories to

---

[2] *See DL Invest. Holdings, LLC f/k/a Durall Capital Holdings, LLC d/b/a Chestatee Regional Hosp. v. Blue Cross and Blue Shield of Georgia, Inc.*, No. 1:18-cv-01116-ELR.

an arbitration agreement. Thus, on March 29, 2018, Plaintiffs initiated this lawsuit (the "Fraud Suit"), leading to the Second Amended Complaint ("SAC") (Dkt. 28).

The claims asserted in the Demand and the SAC are distinct. The Demand contains BCBS Georgia's claims only against Durall Capital under the PPO Contract. (*Id.* ¶ 29.) The SAC, however, contains Plaintiffs' claims (a) against Durall Capital for amounts paid under the HMO and PAR Contracts, and (b) against Reliance, Medivance, Aaron Durall, Zaffuto, and Perez (*but not Durall Capital*) for the amounts paid under each of the three contracts. (*Id.* ¶¶ 116-19.)

## V.   The Hospital Defendants' Inconsistent Arguments

### A.   Durall Capital first demanded arbitration, then argued that BCBS Georgia waived its right to arbitrate.

On February 21, 2018, Durall Capital, at first, demanded that BCBS Georgia arbitrate all claims it had against Durall Capital. (Moore Decl., Ex. 5.) Then, on April 9, 2018, two weeks after Plaintiffs began this lawsuit, Durall Capital opposed BCBS Georgia's motion to compel arbitration, reserving "its right to assert that, through the filing of the [Fraud Suit] . . . that BCBS has waived its right to seek arbitration of the claims at issue here."[3] (*Id.*, Ex. 10.)

---

[3] Durall Capital argued that the arbitral rules required by the PPO Contract—those of the American Arbitration Society—were distinct from the AAA Rules, and therefore arbitration could not proceed before the AAA. (Moore Decl., Ex. 10 at 12.)

**B.     The Hospital Defendants reiterated that Plaintiffs waived their right to arbitrate.**

Four days after Plaintiffs filed the SAC, the Hospital Defendants moved to reassign the Fraud Suit to Judge Ross. (Dkt. 32.) In their moving papers, the Hospital Defendants reiterated their contention that Plaintiffs waived their right to arbitrate by filing the Fraud Suit. (*See* Dkt. 32 at 4 ("BCBS Georgia waived its right to seek arbitration of the claims at issue.").)

**C.     The Hospital Defendants argued *again* that Plaintiffs waived their right to arbitrate.**

On June 18, 2018, the Hospital Defendants moved to stay discovery deadlines in this suit, and *again* argued that Plaintiffs waived their right to arbitrate the claims against Durall Capital in the Demand because of this Fraud Suit. (Dkt. 40 at 22 ("BCBS Georgia's insistence on engaging in the discovery-related tasks would be a further indication of its desire to litigate—rather than to arbitrate—the PPO claims, and a waiver of its right to compel arbitration.").)

**D.     The Hospital Defendants moved to dismiss the SAC, but did not argue that the claims must be arbitrated.**

Defendants moved to dismiss this Fraud Suit on June 4, 2018 and June 13, 2018, respectively. (Dkts. 35 & 38.) But consistent with the position they had been taking since at least April 9, 2018, *none* of the Defendants argued that Plaintiffs were required to arbitrate the claims in the SAC. (*See generally id.*)

8

### E. Durall Capital stated that it wants to "litigate all claims between the parties in one lawsuit."

On July 12, 2018, Durall Capital withdrew its petition to compel arbitration. (Moore Decl., Ex. 11.) The same day, it filed a motion to file a surreply in opposition to BCBS Georgia's motion to compel arbitration. (*Id.*, Ex. 12.) It explained that, "because the Hospital Defendants prefer to resolve all claims in one forum," Durall Capital "*now seeks to litigate all claims between the parties in one lawsuit.*" (*Id.*, Ex. 12 at Ex. A, pp. 10-11 (emphasis added).)

Durall Capital reiterated that Plaintiffs waived their right to arbitrate *any* claims: "*By affirmatively litigating the merits of its arbitrable claims to Chestatee's detriment, BCBS Georgia waives its right to compel arbitration.*" (*Id.* (emphasis added).) It even argued that it would be prejudiced if arbitration occurred because of the "sizeable resources" it dedicated to litigating this Fraud Suit:

> [Durall Capital] already has incurred significant expense both sifting through the voluminous [SAC] . . . and preparing a comprehensive motion to dismiss. And even before the motion to dismiss was fully briefed, Chestatee incurred substantial additional expenses responding to the BCBS Plaintiffs' motion for temporary restraining order and preliminary injunction and motion for expedited discovery. Furthermore, the Court granted the motion for expedited discovery, so the Hospital Defendants continue to dedicate sizeable resources to ongoing discovery issues. . . . The Court should deny BCBS Georgia's Motion to Compel.

*(Id.,* Ex. 12 at Ex. A, p. 15.)

## VI.   The Court Orders Expedited Discovery.

On July 19, 2018, Plaintiffs moved for an asset freeze and expedited discovery. (Dkt. 46.) During the hearing on July 24, 2018, the Court stated that Plaintiffs had satisfied "the parameters of likelihood of success on the merits insofar as establishing a right to something that was paid out." The Court granted Plaintiffs' motion for expedited discovery to trace their funds. (Dkt. 63.) The Hospital Defendants moved for reconsideration, asking the Court to require Plaintiffs to produce certain ERISA-related information before allowing Plaintiffs to do their own discovery. (Dkt. 69.) The Court denied the motion. (Dkt. 72.)

Plaintiffs served the resulting discovery requests on Defendants on August 6, 2018. (Moore Decl., ¶ 14.) Between September 5, 2018 and the present, the Hospital Defendants have produced some materials responsive to the discovery requests, but their production is substantially incomplete. (*Id.*)

## VII.   The Hospital Defendants Seek to Arbitrate Plaintiffs' Claims.

On August 22, 2018, without explanation, Durall Capital withdrew its opposition to BCBS Georgia's motion to compel arbitration and then withdrew its motion to file a surreply in opposition thereto. (Moore Decl., Ex. 13.)

One month later, on September 26, 2018, in a 180-degree turn, the Hospital Defendants filed this Motion. (Dkt. 93.) Their arguments squarely contradict their

earlier positions. For instance, after refusing to arbitrate before the AAA, the Hospital Defendants now want the AAA to arbitrate *all* claims asserted in the SAC against the Hospital Defendants. (*Id*. at 9.) The basis for Durall Capital's earlier refusal to arbitrate was that the AAS was distinct from the AAA; now the Hospital Defendants admit (as Plaintiffs have asserted for nearly a year) that the AAS is the AAA's predecessor. (Dkt. 93 at 12 n.11.)

On October 1, 2018, Durall Capital filed a Proposed Order in the Arbitration Proceeding, requesting that Judge Ross grant BCBS Georgia's petition to compel arbitration of the claims in the Demand with the AAA. (Moore Decl., Ex. 14.) Judge Ross recently issued an order to that effect. (*Id.*, Ex. 15.)

As of this filing, the Hospital Defendants still have not produced the majority of documents that the Court ordered in expedited discovery. On October 16, 2018, apparently hopeful that arbitration might be compelled, thereby saving them from producing responsive materials, the Hospital Defendants moved for an expedited hearing on this Motion. (Dkt. 101.)

**ARGUMENT**

## I. The Hospital Defendants have waived any right to compel arbitration of the claims in the Second Amended Complaint.

The Eleventh Circuit has identified a two-part inquiry to determine whether a party has waived its right to arbitrate. *Gutierrez v. Wells Fargo Bank,*

11

*NA*, 889 F.3d 1230, 1236 (11th Cir. 2018). First, a court must consider whether "under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Id.* (citation omitted). If the first prong is satisfied, courts consider whether the party's conduct has prejudiced the other party. *Id.*

### A. The Hospital Defendants certainly acted inconsistent with a right to arbitrate.

A party may act inconsistently with a right to arbitrate by "substantially invok[ing] the litigation machinery prior to demanding arbitration." *Id.* at 1236. The Eleventh Circuit recently warned against actions by parties that raise a suspicion of forum-shopping:

> Acting in a manner inconsistent with one's arbitration rights and then changing course mid-journey smacks of outcome-oriented gamesmanship played on the court and the opposing party's dime. The judicial system was not designed to accommodate a defendant who elects to forego arbitration when it believes that the outcome in litigation will be favorable to it, proceeds with extensive discovery and court proceedings, and then suddenly changes course and pursues arbitration when its prospects of victory in litigation dim.

*Id.* Other courts have urged similar caution. *See, e.g.*, *Martin v. Yasuda*, 829 F.3d 1118, 1128 (9th Cir. 2016) ("A party may not delay seeking arbitration until after the district court rules against it in whole or in part; nor may it belatedly change its mind after first electing to proceed in what it believed to be a more favorable forum.").

12

The Hospital Defendants' actions over the past eight months make clear that they made a strategic decision to try to consolidate Plaintiffs' claims against them into this proceeding. This point was made explicit when Durall Capital wrote that "because the Hospital Defendants prefer to resolve all claims in one forum," Durall Capital withdrew its petition to compel arbitration and "*now seeks to litigate all claims between the parties in one lawsuit.*" (Moore Decl., Ex. 12 at Ex. A, pp. 10-11 (emphasis added).) Their filings confirm this strategic decision, and shed light on the possible motivations for their recent change-of-heart:

- Feb. 21, 2018: Durall Capital demands that BCBS Georgia arbitrate all claims against it, including for HMO and PAR Contracts. (*Id.*, Ex. 5.)

- Apr. 9, 2018: Durall Capital argues that BCBS Georgia waived its right to seek arbitration of the claims in the Demand and that all claims must be litigated in the Fraud Suit. (*Id.*, Ex. 10)

- May 18, 2018: Hospital Defendants argue in their Motion to Reassign that Plaintiffs waived their right to arbitrate by filing the Fraud Suit. (Dkt. 32.)

- June 18, 2018: Hospital Defendants argue in their motion to stay discovery that Plaintiffs waived their right to arbitrate, and that Plaintiffs' "insistence on engaging in [discovery is] a further indication of its desire to litigate—rather than arbitrate—the PPO claims and a waiver of its right to compel arbitration." (Dkt. 40.)

- June 4 & 13, 2018: Defendants' file motions to dismiss. No one argues that Plaintiffs are required to arbitrate the claims in the SAC. (Dkts. 35 & 38.)

13

- July 12, 2018: Durall Capital seeks a surreply in opposition to Plaintiffs' motion to compel arbitration and writes that, "because the Hospital Defendants prefer to resolve all claims in one forum," Durall Capital withdrew its petition to compel and the Hospital Defendants "*now seek[] to litigate all claims between the parties in one lawsuit.*" (Moore Decl., ¶ 13 & Ex. 12 (emphasis added).) The Hospital Defendants also argue that they would be *prejudiced* if the claims in the Demand were arbitrated, given the resources spent actively litigating the Fraud Suit. (*Id.*)

- July 24, 2018: The Court states that Plaintiffs are likely to succeed on the merits in the Fraud Suit and grants expedited discovery into Defendants' assets. One week later, the Court denies the Hospital Defendants' motion for reconsideration. (Dkt. 72.)

- Aug. 22, 2018: Durall Capital withdraws its opposition to BCBS Georgia's motion to compel arbitration. (Moore Decl., Ex. 13.)

- Sept. 25, 2018: Plaintiffs' counsel informs Hospital Defendants' counsel that Plaintiffs would seek a court order compelling the production of documents required to trace the funds paid by Plaintiffs to Defendants to their present location. (Moore Decl., ¶ 14.)

- September 26, 2018: The Hospital Defendants move to compel arbitration of all claims between the parties. (Dkt. 93.)

The Hospital Defendants' instant Motion represents a bold change. BCBS

Georgia has been trying since November 2017 to arbitrate its claims against

Durall Capital under the PPO Contract, as the parties agree is required. (Moore

Decl., Exs. 1-10.) Durall Capital fought tooth-and-nail to halt that arbitration

before finally conceding in the instant motion that the AAA is the appropriate

arbitral forum for the dispute. (*See* Dkt. 93 at n.11.) At the same time, the

14

Hospital Defendants have actively litigated the Fraud Suit since March 2018, *repeatedly arguing that all the claims between the parties should be litigated in this case*, and now contend—seven months into the Fraud Suit, for the first time—that the claims in the SAC should be arbitrated. Plaintiffs have spent nearly a year trying to litigate these cases and the Hospital Defendants have stymied every effort to advance them by taking contradictory positions whenever it suits them.

The Court should also evaluate the traditional indicators of conduct inconsistent with a desire to arbitrate, including the extent to which the Hospital Defendants have "invok[ed] the litigation machinery." Before filing this Motion, the Hospital Defendants: (a) hired at least 14 attorneys to represent them in these cases, including the four law firms currently representing them; (b) moved to reassign the case to Judge Ross (Dkt. 32); (c) moved to dismiss (Dkt. 38); (d) moved to stay discovery (Dkt. 40); (e) opposed Plaintiffs' motions for an asset freeze and expedited discovery, including five declarations in support (Dkt. 54); (f) objected to declarations provided by Plaintiffs in support of their motion for asset freeze (Dkt. 57); (g) moved to require Plaintiffs to produce ERISA-related information and for reconsideration of the Court's order granting Plaintiffs' expedited discovery (Dkt. 69); (h) filed a joint status report on expedited discovery (Dkt. 68); (i) moved to and did deposit $3 million into the Court's

registry (Dkt. 91); and (j) produced documents and engaged with Plaintiffs and the Court regarding discovery disputes (Moore Decl., ¶ 14). The Hospital Defendants never argued that Plaintiffs' claims in the SAC should be arbitrated. That changed after the Court ordered that they produce documents sufficient to trace the funds at issue to their present-day location.

Even more striking, the Hospital Defendants have repeatedly argued that, by filing and litigating this Fraud Suit, *Plaintiffs waived their right to arbitrate any of the claims against the Hospital Defendants*. (Dkt. 19.) But Plaintiffs' position has been consistent and in accord with the terms of the Contracts: *First*, the only claims subject to arbitration are BCBS Georgia's claims against Durall Capital for amounts paid under the PPO Contract. (*See* Moore Decl., Ex. 3.) *Second*, Plaintiffs' claims against Durall Capital for amounts paid under the HMO and PAR Contracts must be litigated because they are not subject to an arbitration provision. (Dkt. 28 at ¶¶ 116-19.) *Third*, Plaintiffs claims against all other Defendants for amounts paid under each of the three Contracts must also be litigated because they are not subject to arbitration provisions. (*Id*. ¶ 115.)

### B.   Plaintiffs have been prejudiced by Defendants' conduct.

When determining whether the party moving to compel arbitration has prejudiced the non-moving party, courts look to the length of the delay and the

expenses that the nonmoving party has incurred as a result of participating in the litigation process. *Gutierrez*, 889 F.3d at 1236; *see also Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux)*, 62 F.3d 1356, 1366 (11th Cir. 1995) (prejudice exists where moving party allowed nonmoving party to incur significant litigation expenses).

Eight months ago, Durall Capital suggested in a letter to BCBS Georgia that the parties agree to arbitrate all of BCBS Georgia's claims against Durall Capital under the three Contracts. (Moore Decl., Ex. 5.) The parties did not reach an agreement and the Hospital Partners moved on to arguing, instead, that all of the claims should be decided together in this Fraud Suit. (*See, e.g., id.*, Exs. 10, 12; *see also* Dkts. 13, 32, and 40.) Now, after seven months of active participation in this Fraud Suit, and more than eight months of litigating over the proper arbitral forum for the claims under the PPO Contract against Durall Capital (all the while refusing to actually proceed with the arbitration), the Hospital Defendants ask this Court to order the parties to start over in an arbitration. In addition to this significant passage of time, there is the expense of litigating to this point: Plaintiffs' counsel have worked more than $1 million in billable time and the cases have resulted in more than $50,000 in costs. (Moore Decl. ¶ 18.)

Moreover, when the Hospital Defendants argued that BCBS Georgia waived the right to arbitrate against Durall Capital and insisted that all claims between the parties be litigated, they asserted that *they* would be prejudiced because they had incurred costs "sifting through the voluminous [SAC]" and "preparing a responsive pleading." (Moore Decl., Ex. 12 at Ex. A, p. 15.) By Defendants' own standards, Plaintiffs would undoubtedly be prejudiced if all claims between all parties under all contracts are sent to arbitration given the time and expense already invested in these two proceedings. Therefore, Plaintiffs respectfully request that the Court deny Hospital Defendants' Motion to Compel Arbitration as any right to arbitrate (to the extent it ever existed) was waived.

## II.     Plaintiffs agree that the claims against Durall Capital for payments made under the PPO Contract must be arbitrated.

Plaintiffs agree with the Hospital Defendants that the claims against Durall Capital for amounts paid under the PPO Contract must be arbitrated. (Dkt. 28.) In fact, that is precisely why BCBS Georgia filed the Demand. (*See* Moore Decl., Ex. 3.) Judge Ross recently ordered these claims to be arbitrated before the AAA. (*Id.*, Ex. 15.) But by the plain language of the Contracts, these are the only claims asserted by Plaintiffs that must be arbitrated. (*See* Dkt. 28 at Exs. A-C.)

III.   **The Hospital Defendants cannot compel Plaintiffs to arbitrate their remaining claims.**

   A.   **The HMO and PAR Contracts do not have arbitration provisions.**

The PAR and HMO Contracts do not contain arbitration provisions, and therefore disputes arising from them need not be arbitrated against Durall Capital (a signatory), much less against non-signatories like Reliance Labs, Medivance, Aaron Durall, Neisha Carter Zaffuto, and Jorge Perez, whose only connection to those contracts was to misuse them in furtherance of their fraudulent scheme. (*See* Dkt. 28 at Exs. B-C.) Arbitration is a matter of contract, "[and] the FAA's strong proarbitration policy only applies to disputes that the parties *have agreed to arbitrate*." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (emphasis added); *see Seaboard C. L. R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1349-50 (11th Cir. 1982) (affirming denial of motion to compel arbitration of claims that arose from a contract lacking an arbitration provision even though its subject-matter touched on that of a separate contract that did require arbitration).

The Hospital Defendants have not provided any legal authority for their contention that the PPO Contract's arbitration provision can be ported to the HMO and PAR Contracts, which lack such a provision. Equitable estoppel applies to circumstances where a *non-signatory* to a contract with an arbitration provision wishes to have claims resolved in arbitration, *not* to circumstances

19

where (a) a signatory of one contract seeks to apply an arbitration provision from one of their other contracts (as Durall Capital is seeking to do), or (b) where non-signatories to a contract without an arbitration provision seek to apply an arbitration provision from another contract that they are not signatories to (as the non-signatory Hospital Defendants are seeking to do). The Hospital Defendants cannot require Plaintiffs to arbitrate their claims under the HMO or PAR Contracts because those contracts *have no arbitration provision*.

### B. The non-signatory Hospital Defendants cannot compel Plaintiffs to arbitrate the claims for amounts paid under the PPO Contract.

The Hospital Defendants contend that equitable estoppel allows them to compel arbitration of Plaintiffs' claims for amounts paid under the PPO Contract against Reliance, Medivance, Durall, and Zaffuto, even though none of them are signatories to that contract. (Dkt. 93 at 13-14.) This disregards the fundamental objective of equitable estoppel: fairness.

Equitable estoppel allows a non-signatory to enforce an agreement containing an arbitration provision against a signatory: (1) when a signatory relies on the contract's terms to assert its claims against the non-signatory; or (2) when a signatory raises allegations of substantially interdependent and concerted misconduct by both non-signatories and signatories to the contract. *Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1320-21 (11th Cir. 2013).

20

The Hospital Defendants argue that Plaintiffs' claims must be arbitrated because each claim in the SAC incorporates every preceding paragraph, thereby incorporating the terms of the PPO Contract (and its arbitration provision) into "each of the ten (10) counts of the SAC." (Dkt. 93-1 at 16.) This makes little sense. A signatory "relies" on a contract when it attempts to hold a non-signatory to the contract's terms; the mere fact that a signatory's claims would not have arisen in the contract's absence does not itself warrant equitable estoppel. *Bailey*, 705 F.3d at 1321-22. The Hospital Defendants fail to explain how this technical aspect of pleading demonstrates that Plaintiffs have sought to hold the non-signatory Hospital Defendants to the terms of the PPO Contract. Instead, the PPO Contract was a necessary predicate and vehicle for the fraudulent scheme orchestrated by the non-signatory Hospital Defendants, but the PPO Contract is *not* the legal basis for Plaintiffs' claims against them. Therefore, equitable estoppel is inapplicable. *See Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1173 (11th Cir. 2011) (although contract with arbitration provision was referenced, it was "not the legal basis for the [Plaintiffs'] claims against [Defendant].").

The SAC does allege that Durall Capital agreed with the non-signatory Hospital Defendants to bill the fraudulent claims to Plaintiffs. However, the application of equitable estoppel should be grounded in fundamental fairness,

and applying equitable estoppel here would only reward the Hospital Defendants for their gamesmanship. As the Eleventh Circuit observed, "'the lynchpin for equitable estoppel is equity,' and the point of applying it to compel arbitration is to prevent a situation that 'would fly in the face of fairness.'" *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (2002) (quoting *Hill v. G E Power Systems, Inc.*, 282 F.3d 343, 361 (5th Cir. 2002)), *rev'd on other grounds sub nom.*, *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003). For many reasons, fairness is not served by requiring Plaintiffs to arbitrate their claims in the SAC.

*First*, for months, the Hospital Defendants have argued that these very claims should be litigated. That strategic decision, and the timing of the instant motion, suggest that the Hospital Defendants' are motivated not by some new reading of the Contracts or legal theory, but by a desire to avoid the expedited discovery that the Court has ordered. If the Court orders that the claims be arbitrated, that discovery will stop and there is a substantial risk that the Hospital Defendants will conceal or dissipate Plaintiffs' assets during the months that it will take to assemble an arbitration panel and brief the issue.

*Second*, there are no efficiencies to be gained by compelling arbitration of Plaintiffs' claims against the non-signatory Hospital Defendants for amounts paid under the PPO Contract. The Hospital Defendants injured Plaintiffs by

causing fraudulent claims to be submitted under the HMO and PAR Contracts, and those claims will remain before the Court because they do not contain arbitration provisions. (*See* Section III.A., *supra*.) Similarly, Jorge Perez has not moved to compel arbitration, so the claims against him will remain. (*See* Dkt. 93.)

*Third*, the Hospital Defendants waived any right to arbitrate the claims asserted in the SAC. (*See* Section I, *supra*.) Equity rewards only the diligent, not those who fail to assert the rights they purport to have. *Williams v. Int'l Ass'n of Machinists & Aerospace Workers*, 484 F. Supp. 917, 920 (S.D. Fla. 1978) ("[n]o rule is more settled than that equity aids only the vigilant"); *Raines v. Clay*, 131 S.E. 499, 500 (Ga. 1926) (same); 27A Am. Jur. 2d *Equity* § 93.

For these reasons, fairness would not be served by compelling arbitration of Plaintiffs' claims against the non-signatory Hospital Defendants for the amounts paid under the PPO Contract. Instead, it would reward the Hospital Defendants' gamesmanship and efforts to evade the Court's discovery orders.

## IV.    There is no reason to stay Plaintiffs' claims.

A court may allow non-arbitrable issues to proceed simultaneously with an arbitration if it is "feasible to proceed with litigation." *Variable Annuity Life Ins. Co. v. Laferrera*, 680 F. App'x 880, 884 (11th Cir. 2017). This determination hinges

on whether arbitrable claims predominate or whether the outcome of non-arbitrable claims depends on the results of the arbitration. *Id*.

In this case, Plaintiffs' claims in the SAC predominate over the claims that must be arbitrated. The arbitration involves Plaintiffs and only one Defendant (Durall Capital) and relates only to claims paid under the PPO Contract. This proceeding, on the other hand, involves Plaintiffs and *seven* defendants, includes claims based on each of the three Contracts, and includes amongst Defendants the individuals who controlled the entity defendants and caused them to participate in the fraudulent scheme. (Dkt. 28.) Therefore, the claims here predominate over those in the arbitration.

Further, the outcome of the claims in the SAC is not dependent on the results of the arbitration. Each of the three Contracts has distinct terms. Counts I-IV and VII in the SAC all stem from the terms of the HMO and PAR Contracts, without reference to the PPO Contract. Counts V and VI involve similar fraudulent conduct by Defendants, but a finding in the arbitration that Durall Capital did not engage in fraud under the PPO Contract does not have any bearing on whether the non-signatory Hospital Defendants engaged in fraud on the same claims. In addition, the three Contracts govern the provision of treatment to distinct sets of Plaintiffs' members. The Hospital Defendants' rest on

24

the fact that the SAC and the Demand alleged the same fraudulent scheme, but the analysis does not stop there. Therefore, none of the claims in the SAC should be compelled to arbitration or stayed. However, if the Court orders that some of the claims in the SAC should be arbitrated, the outcome of the remaining claims in the SAC are not dependent on the outcome of the arbitration, and therefore should continue apace.

## CONCLUSION

The Hospital Defendants have waived any right they previously had to arbitrate these claims and equitable estoppel does not apply. Therefore, Plaintiffs respectfully request that the Court deny the Hospital Defendants' Motion.

Dated: October 19, 2018          By:   */s/ T. Joshua R. Archer*

BALCH & BINGHAM LLP
T. Joshua R. Archer (Georgia #021208)
30 Ivan Allen, Jr. Blvd. N.W., Suite 700
Atlanta, GA 30308
T: (404) 962-3556
F: (404) 261-3656
jarcher@balch.com

- and -

ROBINS KAPLAN LLP
Jeffrey S. Gleason (*admitted PHV*)
Randall Tietjen (*admitted PHV*)
Jamie R. Kurtz (*admitted PHV*)
Nathaniel J. Moore (*admitted PHV*)

25

Amira A. ElShareif (*admitted PHV*)
800 LaSalle Avenue
Minneapolis, MN 55402-2015
T: (612) 349-8500
F: (612) 339-4181
jgleason@robinskaplan.com
rtietjen@robinskaplan.com
jkurtz@robinskaplan.com
nmoore@robinskaplan.com
aelshareif@robinskaplan.com

**Attorneys for Plaintiffs**

## LOCAL RULE 7.1D CERTIFICATION

Through the signature below, counsel hereby certifies that the foregoing document was prepared in Book Antiqua, 13-point font, with lines double-spaced, in compliance with Local Rule 5.1C.

This 19th day of October 2018.

/s/ T. Joshua R. Archer
T. Joshua R. Archer (Ga. Bar No. 021208)

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be electronically filed with

the Clerk of Court using the CM/ECF system, which will automatically send

notification to all counsel of record:

Levi Williams, Jr.
Chad Marcus
Law Offices of Levi Williams
12 SE 7th St., Ste. 700
Ft. Lauderdale, FL 33301

David Di Pietro
Jocelyn Ezratty
Di Pietro Partners, LLP
901 E. Las Olas Blvd., Ste. 202
Ft. Lauderdale, FL 33301

Dmitry Shifrin
Polsinelli, PC – IL
150 N. Riverside Plaza, Ste. 3000
Chicago, IL 60606

Bryan McEvoy
Ellen Persons
Polsinelli, P.C. – GA
1201 W. Peachtree, St., NW, Ste. 1100
Atlanta, GA 30309

Mohamad Ahmad
Joseph, Aleem & Slowik, LLC – Atl
1355 Peachtree St., Ste. 700
Atlanta, GA 30309

Yussuf Abdel-Aleem
The Aleem Law Firm
1355 Peachtree St., Ste. 700
Atlanta, GA 30309

*Counsel for Defendants DL Investment Holdings, LLC, Reliance Laboratory Testing, Inc., Medivance Billing Service, Inc., Aaron Durall, and Neisha Carter Zaffuto*

Robert Mclendon, IV
Robert R. Mclendon, IV, P.C.
150 Court Square – Ste. C
Blakely, GA 39823

Frank Smith
FMS Lawyer PL
9900 Stirling Road #226
Cooper City, FL 33024

*Counsel for Defendant Jorge Perez*

This 19th day of October 2018.

/s/ T. Joshua R. Archer
T. Joshua R. Archer (Ga. Bar No. 021208)