# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Blue Cross and Blue Shield of
Georgia, Inc., et al.,

                    Plaintiffs,

v.

DL Investment Holdings, LLC, et
al.,

                    Defendants.

_____/

Case No. 1:18-cv-01304

Michael L. Brown
United States District Judge

## OPINION AND ORDER

Defendants DL Investment Holdings, LLC, Reliance Laboratory Testing, Inc., Medivance Billing Service, Inc., Aaron Durall, and Neisha Carter Zaffuto (collectively, the "Hospital Defendants") move to compel arbitration of all claims against them in this proceeding. (Mot. to Compel, Dkt. 93.) Alternatively, they seek to stay all claims not sent to arbitration, and, again alternatively, to stay all litigation pending appeal of any order by the Court denying their motion to compel arbitration. (Defs.' Br. in Supp. of Mot. to Compel, Dkt. 111.) As explained below, the Court grants in part and denies in part Hospital Defendants' motion to

compel arbitration — sending all claims against all Defendants involving the PPO contract (which contains an arbitration clause) to arbitration. The Court, however, refuses to order arbitration of claims arising under the HMO and PAR contract (which do not contain arbitration clauses). This order gives full force and effect to the parties' agreement to arbitrate and to the federal policy favoring arbitration.

The Court exercises its discretion not to stay the non-arbitrable claims as the Court finds it feasible to continue the litigation while the arbitration proceeds. Finally, Court finds an appeal of the order denying arbitration of claims under the HMO and PAR contracts would be frivolous. The Court thus refuses to stay this matter pending appeal.

## I. Background Facts

### A. The Parties and the Contracts

Plaintiffs, a group of Blue Cross & Blue Shield health care plans and third-party administrators, provide insurance benefits to members and their dependents for services at hospitals and medical offices around the country. (Second Am. Compl., Dkt. 28 at ¶ 70.) For purposes of this

litigation, they have assigned their claims to Blue Cross and Blue Shield of Georgia.[1]

Defendant Aaron Durall is the owner and manager of Defendant DL Investment Holdings ("DL Investment"). (*Id.* at ¶ 145.) He is also the president of Defendant Reliance Laboratories ("Reliance Labs"), a toxicology laboratory in Sunrise, Florida. (*Id.*) Reliance Labs provides urine drug tests for patients. Defendant Medivance Billing Service ("Medivance") is also located in Florida, with Defendant Neisha Carter Zaffuto as its president. (*Id.* at ¶ 13.) Medivance provides billing services to clients, including Reliance Labs. (*Id.* at ¶¶ 13–14.)[2]

Since 1998, BCBS has had three contracts with a Georgia hospital known as Chestatee Regional Hospital: (1) a PAR contract, (2) an HMO contract, and (3) a PPO contract. (*Id.* at ¶¶ 83–85.) In August 2016, DL Investment (then known as Durall Capital) purchased Chestatee Hospital and began running it. (*Id.* at ¶ 5.) Chestatee assigned all three contracts to DL Investment, meaning DL Investment assumed the rights

---

[1] Hereinafter, the Court will refer to Blue Cross and Blue Shield of Georgia, and the Plaintiffs collectively, as "BCBS."

[2] Jorge Perez is also a named defendant. He filed no motion to compel arbitration, and the claims against him will remain in this proceeding.

and obligations set forth in the contracts. (*Id.* at ¶ 6.) None of the other Hospital Defendants are parties to the contracts.[3]

The PPO contract contains a broad arbitration agreement. The PPO contract requires BCBS and DL Investment to "meet and confer in good faith to resolve any problems or disputes that may arise under [the PPO]." (PPO Contract, Dkt. 28-3 at 15.) The arbitration clause provides that "[i]n the event that any problem or dispute is not satisfactorily resolved, . . . [the signatories] agree to arbitrate such problem or dispute . . . pursuant to the rules of the American Arbitration Society." (*Id.*)

Neither the PAR contract nor the HMO contract contains an arbitration provision.

## B. The Fraudulent Scheme

As part of the contracts at issue, BCBS agreed to reimburse Chestatee Hospital for medically necessary urine drug tests performed at the hospital for its patients. (Second Am. Compl. at ¶ 4.) In fact, because Chestatee is a rural hospital, BCBS agreed to pay a premium for

---

[3] The Court will refer to the group of all Hospital Defendants except DL Investment as the "Non-Signatory Defendants."

4

tests Chestatee performed.  (*Id.* at ¶ 14.)  Reliance Labs, on the other hand, had no contract with BCBS, let alone a contract that entitled it to receive premium reimbursements for urinary tests it conducted.  (*Id.* at ¶ 19.)

Plaintiffs allege that, after acquiring Chestatee, Defendants began using the hospital in Georgia as a shell through which to funnel laboratory tests that Reliance Labs performed in Florida.  (*Id.* at ¶ 7.) Specifically, they allege Hospital Defendants conspired to submit claims under all three contracts for urine drug tests that Reliance Labs performed while falsely claiming Chestatee had done them.  (*Id.* at ¶ 14.) BCBS alleges that the scheme was profitable for Hospital Defendants because "Chestatee's contracts with Plaintiffs entitled it to substantially more for the tests than Reliance Labs would receive directly."  (Pls.' Resp. to Defs.' Mot. to Compel, Dkt. 104 ("Resp.") at 5.)  BCBS claims that the Hospital Defendants worked together to submit false and misleading claims for urinary drug tests, making BCBS believe that Chestatee had conducted the tests in compliance with the three contracts and causing BCBS to pay claims not covered by the contracts.  (Second Am. Compl. at ¶ 22.)

In total, Plaintiffs claim that Hospital Defendants wrongfully collected more than $100 million from Plaintiffs. (*Id.* at ¶ 116; Resp. at 5.)

## C.   The Arbitration Proceeding

In November 2017, BCBS sent a letter demanding that Durall Capital confer about their bills for urine tests. (Resp. at 6.) Durall Capital did not respond for two months and then refused to address the allegations. (*Id.*) In February 2018, BCBS filed a Demand for Arbitration against DL Investment. (*Id.*) The Demand stated specifically that BCBS Georgia sought to arbitrate *only* those amounts paid under the PPO contract — the contract containing the arbitration clause — but not amounts paid under the PAR and HMO contracts. (*Id.*)

At first, DL Investment disputed the governing arbitration rules, as the PPO contract mistakenly identified the rules of the American Arbitration Society instead of the American Arbitration Association. (*Id.*) DL Investment refused to arbitrate the claims under the AAA rules, and only agreed to do so if Plaintiffs made certain concessions. (*Id.* at 7.) DL Investment then filed in state court a petition to compel arbitration of

the PPO claims, which Plaintiffs removed to federal court.  The Court later granted the motion to compel arbitration.  (*Id.*)[4]

### D.    Proceedings Before This Court

Because the HMO and PAR contracts contain no arbitration provisions, Plaintiffs filed this suit in March 2018 to recover funds paid under those two contracts and to assert claims against parties who were not signatories to any of the three contracts.  (Resp. at 7–8.)

Plaintiffs then moved for a temporary restraining order and preliminary injunction to freeze Defendants' assets.  (Pls.' Mot. for TRO & Prelim. Inj., Dkt. 46.)  Plaintiffs also moved for expedited discovery. (Pls.' Mot. for Expedited Disc., Dkt. 48.)  On July 24, 2018, the Court denied Plaintiffs' motion for injunctive relief but granted limited expedited discovery, so Plaintiffs might trace any ill-gotten gains as required for a preliminary injunction.  (July 24, 2018, Minute Entry, Dkt. 63.)  Hospital Defendants moved for reconsideration of the Court's order,

---

[4] *DL Investment Holdings, LLC v. Blue Cross and Blue Shield of Georgia, Inc.*, ("*Arbitration Proceeding*"), No. 1:18-cv-1116 (N.D. Ga. Oct. 2, 2018), ECF No. 36.

which the Court denied.  (Hosp. Defs.' Mot. for Recons., Dkt. 69; Order on Mot. for Recons., Dkt. 72.)

Hospital Defendants moved to compel arbitration on September 26, 2018.  The parties submitted discovery disputes to the Court on October 1 and 18, 2018, mostly involving the availability of certain bank records. During a November 1, 2018 teleconference that included a witness from the bank, the Court ordered Defendants to produce the bank records.  (Tr. of Nov. 1, 2018, Teleconference, Dkt. 109 ("Nov. 1 Tr.") at 18:13–19:8.) Several days before that deadline, however, Hospital Defendants filed their emergency motion to stay discovery pending ruling on the motion to compel arbitration.  (Mot. to Stay, Dkt. 110.)  The Court granted Hospital Defendants' requested stay and held a hearing on the motion to compel arbitration.

## II.  Analysis and Discussion

A district court determines whether to grant a motion to compel arbitration based on a two-step inquiry.  The first step is to inquire whether the parties agreed to arbitrate the dispute and the second "involves deciding whether legal constraints external to the parties'

agreement foreclosed arbitration."[5] *See Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (internal quotation marks omitted). The Court must do this in the light of a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As a result, both the Supreme Court and the Eleventh Circuit have explained that district courts must "rigorously enforce agreements to arbitrate." *Klay*, 389 F.3d at 1200 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

Arbitration, however, is a matter of contract and the strong pro-arbitration policy applies only to disputes that parties have agreed to arbitrate. When a contract between two parties contains no arbitration agreement, a court cannot compel the parties to settle their dispute through arbitration. *Id.* It's simple: if parties agree to arbitrate their disputes, the Court must enforce that agreement; if they don't, the Court cannot force arbitration.

---

[5] Because neither party raised an issue as to the enforceability of the arbitration agreement, the Court discusses only the first step of this analysis — whether the parties agreed to arbitrate the dispute.

There is one exception. A non-party to a contract containing an arbitration agreement may force arbitration " 'if the relevant state contract law allows him [or her] to enforce the agreement' to arbitrate." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011) (quoting *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Georgia law — the operative law here — recognizes the doctrine of equitable estoppel as an exception to the general rule that only parties to a contract may enforce the contract. *Id.* Equitable estoppel allows a non-signatory to an arbitration agreement to compel a signatory (or be compelled by a signatory) to arbitrate in some cases, specifically "(1) when the claims relate to the contract or (2) when the claims against the signatory and the nonsignatory arise out of interdependent and concerted misconduct by those parties." *Autonation Fin. Servs. Corp. v. Arain*, 592 S.E.2d 96, 99 (Ga. Ct. App. 2003); *see Lawson*, 648 F.3d at 1172 n.4.[6]

---

[6] Georgia law also provides third-party beneficiaries to a contract standing to enforce an arbitration agreement. *U.S. Foodservice, Inc. v. Bartow Cty. Bank*, 685 S.E.2d 777 (Ga. Ct. App. 2009). The Non-Signatory Defendants do not contend they are third-party beneficiaries of the PAR or HMO contracts or that any other doctrine of Georgia law allows them to compel arbitration. The Court agrees.

Against this legal backdrop, the Court considers Hospital Defendants' motion to compel.

## A.    Counts One through Four

Counts One through Four involve only claims between BCBS and Defendant DL Investment arising from the PAR and HMO contracts. In Counts One and Three, Plaintiffs allege that DL Investment breached the PAR contract and the covenant of good faith and fair dealing arising from the PAR contract. In Counts Two and Four, Plaintiffs allege DL Investment breached the HMO contract and the covenant of good faith and fair dealing that arises from it. (The Non-Signatory Defendants are not named in these counts.)

The PAR and HMO contracts between BCBS and DL Investment contain no arbitration provisions. In this way, they are fundamentally different from the PPO contract, which contains an arbitration provision and is already the subject of an arbitration proceeding. When the parties entered into these two contracts, they chose not to require arbitration. It was part of their agreement. After all, the decision not to include an arbitration provision in a contract is an agreement not to arbitrate. Just as the Court must enforce the agreement to arbitrate the PPO contract,

it must honor the parties' decision not to arbitrate disputes arising under the PAR and HMO contracts.

"In the absence of an agreement to arbitrate, a court cannot compel the parties to settle their dispute in an arbitral forum." *Klay,* 389 F.3d at 1200. In *Klay*, for example, a group of physicians sued a group of HMOs for allegedly failing to properly reimburse them for services rendered. *Id.* at 1195. The defendants moved to compel arbitration of all claims under arbitration agreements that it had with some physicians. *Id.* The district court granted that motion for claims arising from agreements that contained arbitration agreements but refused to compel arbitration of so-called "non-par" claims that arose under contracts that did not contain arbitration agreements. *Id.* at 1195–96. The Eleventh Circuit affirmed. *Id.* at 1202. In doing so, it held that just because the HMO had one contract with a physician that contained an arbitration provision did not require arbitration of claims arising under contracts containing no arbitration provision. *Id.* at 1201. The court held that the defendants' "attempt to expand the scope of various arbitration agreements to cover the rendition of services outside of the services

contemplated by a particular contract [containing a provision] is ineffectual." *Id.* The court also explained that:

> Because arbitration can only be compelled when the subject of the dispute has been agreed to be settled by arbitration, having one contract which contains a broad arbitration agreement does not necessarily mean that arbitration can be compelled when the subject of the dispute arises from a separate contract which does not have an arbitration clause.

*Id.* Since the *Klay* defendants failed to present any evidence that the physicians agreed to arbitrate non-par claims, the Court of Appeals affirmed the district court's order denying arbitration of those claims. *Id.; see also Seaboard Coast Line R.R. Co. v. Trailer Train Co.,* 690 F.2d 1343, 1352 (11th Cir. 1982) (refusing to compel arbitration based on broad arbitration clause in license contract between parties when underlying claim was for breach of separate lease contract that did not contain arbitration clause).

The same rule must apply here. BCBS and DL Investment agreed to arbitrate disputes arising under the PPO contract but did not agree to arbitrate disputes arising under the PAR or HMO contracts. The Court must enforce their bargain. It can no more ignore their decision not to arbitrate these two contracts than it can ignore their decision to arbitrate the PPO contract.

And the doctrine of equitable estoppel does not lead to a different result. That doctrine — in some circumstances — allows non-signatories to a contract containing an arbitration provision to compel a signatory to arbitrate a dispute. It does not allow one party to a contract without an arbitration provision to compel its counter-party to arbitrate, simply because another contract between them has such a provision. The Court denies Hospital Defendants' motion to compel arbitration of Counts One through Four — the counts that involve only the PAR and HMO contracts.

## B.     Counts Five and Six

Counts Five and Six involve claims against all Defendants arising under all three contracts. In Count Five, for example, BCBS charges all Defendants with fraud and fraudulent concealment, claiming each Defendant made intentional misrepresentations of material facts to BCBS to cause BCBS to pay claims under all three contracts. (Second Am. Compl. at ¶ 274.)  As part of this, Plaintiffs allege that all Defendants failed to disclose to BCBS that they had an agreement to "participate in a pass-through scheme in breach of Chestatee's HMO, PAR, and PPO Contracts with BCBS. . . ." (*Id.* at ¶ 280.)  Finally, BCBS

alleges Defendants deceived it with the false representations and that it reasonably relied on the misrepresentations when it paid claims under the contracts. (*Id.* at ¶¶ 288–289.) Similarly, in Count Six, BCBS alleges that all Defendants made negligent misrepresentations to cause it to pay claims under each of the three contracts.[7]

As explained above, BCBS and DL Investment agreed in the PPO contract to arbitrate any problems or disputes. (PPO Contract at 15.) Their arbitration agreement is broader than the breach of contract claim that is currently pending in arbitration. Some portion of the fraud and fraudulent concealment claims against DL Investment, as well as the negligent misrepresentation claims, arise under the PPO contract. That is because Plaintiffs allege that DL Investment's fraudulent or negligent misrepresentations were part of a scheme to cause BCBS to pay claims under the PPO that did not, in fact, qualify for payment under that contract. *See Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) (holding that party seeking to compel arbitration of

---

[7] Plaintiffs bring the negligent misrepresentation claims in Count Six as an alternative to the fraud claims in Count Five. (Second Am. Compl. at ¶¶ 293–303.)

claims "arising out of" a contract must show existence of some direct relationship between the dispute and the performance of duties specified by the contract).

But as stated repeatedly already, DL Investment and BCBS did not negotiate to resolve through arbitration fraud and fraudulent concealment claims arising under the PAR and HMO contracts. The Court must enforce their decision not to do so. *Goldberg v. Bear, Stearns & Co.,* 912 F.2d 1418, 1419 (11th Cir. 1990) ("[T]he parties will not be required to arbitrate when they have not agreed to do so."); *see also EEOC v. Waffle House, Inc.,* 534 U.S. 279, 294 (2002) ("Arbitration under the [FAA] is a matter of consent, not coercion." (alteration in original) (citations omitted)). As a result, the Court grants DL Investment's motion to compel arbitration of claims asserted in Counts Five and Six that arise under the PPO contract. The Court, however, refuses to compel arbitration of those claims in Counts Five and Six that arise under the HMO and PAR contracts. The Court recognizes that this ruling requires BCBS and DL Investment to litigate fraud and fraudulent concealment claims in two venues. That is, however, what the parties apparently wanted when they executed the agreements with different provisions.

And, of course, while the conduct may be similar, whether the conduct constitutes an intentional or negligent misrepresentation that caused unnecessary payments will depend on the terms of each contract and the representations made to cause payments under them. BCBS and DL Investment will get the benefit of their bargain.

The Non-Signatory Defendants also moved to compel arbitration of the fraudulent and negligent misrepresentation claims asserted against them in Counts Five and Six. Since they are not signatories to the agreement, they must establish their right to compel arbitration under the doctrine of equitable estoppel. The Court finds that they have made this showing for two reasons. First, Georgia courts have applied equitable estoppel when "the signatory to a written agreement [requiring arbitration] . . . must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Lawson*, 648 F.3d at 1172 (quoting *Arain*, 592 S.E.2d at 100). As explained above, some portion of BCBS's fraudulent and negligent misrepresentation claims arise under and depend on the terms of the PPO contract. Plaintiffs contend that Non-Signatory Defendants made the misrepresentations to cause BCBS to pay claims under the PPO contract (and other contracts) that did not

— in fact — qualify for payment under the contract. Whether BCBS had to pay the claims will depend on the contract. Plaintiffs concede that "the PPO Contract was a necessary predicate" to the fraudulent scheme. (Resp. at 22.)

Second, under Georgia law, a party may rely on the doctrine of equitable estoppel "when the claims against the signatory and the nonsignatory arise out of interdependent and concerted misconduct by those parties." *Arain*, 592 S.E.2d at 100; *see Lawson*, 648 F.3d at 1172 n.4. Plaintiffs allege that all Non-Signatory Defendants made misrepresentations as part of a "scheme" with DL Investment to mislead BCBS into paying Chestatee's claims. (Second Am. Compl. at ¶ 274.) The very crux of their claim alleges a "pass-through scheme" between all Defendants to mislead BCBS. (*Id.* at ¶ 22.) For these reasons, the Court finds that the Non-Signatory Defendants can compel arbitration, under the doctrine of equitable estoppel for claims brought against them in Counts Five and Six arising from the PPO contract.

The portions of Counts Five and Six arising from the PAR and HMO contracts do not, however, satisfy the requirements of equitable estoppel. These contracts contain no arbitration clause. The fraudulent and

negligent misrepresentation claims that allegedly caused BCBS to make payments wrongfully under the PAR and HMO contracts do not rely on the terms of a contract containing an arbitration clause. To the contrary, they rely on the terms of contracts in which the signatories elected *not* to compel arbitration. For the same reason, claims arising under the PAR and HMO contracts against the Non-Signatory Defendants are not part of concerted activity with a party to an arbitration agreement. Defendants cite no authority to allow non-signatories to an agreement without an arbitration provision nevertheless to compel arbitration because of some other agreement to which they are also non-signatories contains an arbitration clause. Indeed, it would make no sense to compel arbitration of the fraudulent and negligent misrepresentation claims against the Non-Signatory Defendants arising under the PAR and HMO contracts when DL Investment (the signatory to those contracts) cannot compel arbitration.

## C. Counts Seven and Eleven

In Counts Seven and Eleven, BCBS brings claims against the Non-Signatory Defendants for tortious interference with BCBS's contracts with Chestatee and for unjust enrichment. (DL investment is not named

in these Counts.) As with the claims discussed above, some portion of these claims rely on the terms of the PPO agreement. BCBS, for example, alleges that it had "three valid and enforceable contracts with Chestatee (i.e., the PAR Contract, the HMO Contract, and the PPO Contract)." (Second Am. Compl. at ¶ 305.) BCBS also alleges that the Defendants named in these Counts "caused Chestatee to breach its contracts with BCBS" by submitting some claims. (*Id.* at ¶ 308.) Whether these Defendants caused Chestatee to breach the PPO contract, the PAR contract, or the HMO contract will, of course, depend on the terms of the contract. The point is that some portion of BCBS's claims for tortious interference requires application of the PPO contract.

Similarly, BCBS claims in Count Eleven that the Non-Signatory Defendants unjustly enriched themselves when they fraudulently caused BCBS to pay Chestatee for services that Chestatee did not perform and for which it was not entitled to payment. (*Id.* at ¶ 351.) Again, whether some portion of these claims were wrongfully paid under the PPO contract will depend on the terms of that agreement.

The doctrine of equitable estoppel thus applies to these claims just as it applies to the claims against the Non-Signatory Defendants in

Counts Five and Six.  For the reasons set forth above, the portion of the tortious interference and unjust enrichment claims arising from the PPO contract are properly subject to arbitration under the doctrine of equitable estoppel.  But, again, the portions of Counts Seven and Eleven arising from the PAR and HMO contracts are not eligible for equitable estoppel.

### D.    Counts Nine and Ten[8]

BCBS brings claims against all Defendants for restitution and injunctive relief under ERISA in Counts Nine and Ten, respectively. These Counts involve claims that arise under all three contracts.  The analysis of Hospital Defendants' motion to compel arbitration for these claims mirrors the analysis for Counts Five and Six.  Any claims against DL Investment for restitution and injunctive relief under ERISA for payments made under the PPO contract or claims to be submitted under that contract are subject to the arbitration provision the parties negotiated as part of the PPO contract.  Likewise, the claims against the Non-Signatory Defendants for restitution and injunctive relief under

---

[8] The Second Amended Complaint contains no Count Eight.

ERISA for payments made under the PPO contract or to be made under that contract satisfy both prongs of the equitable estoppel doctrine. BCBS must rely on the terms of the PPO contract in asserting these claims against the Non-Signatory Defendants and has alleged these Defendants acted in concert with a signatory to the contract requiring arbitration. (*Id.* at ¶ 334.)

On the other hand, the claims against DL Investment for restitution and injunctive relief for payments made or to be made under the HMO and PAR contracts are not subject to arbitration and may continue here. Likewise, the claims against the Non-Signatory Defendants for restitution and injunctive relief involving payments made or to be made under the HMO and PAR contracts do not satisfy the requirements of equitable estoppel. They do not involve the terms of a contract requiring arbitration or allege concerted activity with a signatory to an arbitration agreement for these claims.

For these reasons, the Court grants Hospital Defendants' motion to compel arbitration of any claims under Counts Ten and Eleven arising from or related to the PPO contract. The Court denies Defendants' motion for claims arising under or related to the other two contracts.

## E. Waiver of the Right to Arbitrate

BCBS argues that Defendants waived their right to demand arbitration. Certainly, a party can waive the right to arbitrate like it can waive any other contractual right. *Gutierrez v. Wells Fargo Bank, N.A.*, 889 F.3d 1230, 1235 (11th Cir. 2018). To determine whether a party has waived its arbitration rights, a court must consider (1) whether the party has acted inconsistently with the right to arbitrate and (2) whether the party's conduct has prejudiced the opposing party. *Id.* at 1236. "A key factor in deciding [if a party has acted inconsistently with the right to arbitrate] is whether a party has 'substantially invoke[d] the litigation machinery prior to demanding arbitration.'" *Id.* at 1235 (alteration in original) (quoting *S & H Contractors v. A.J. Taft Coal Co.,* 906 F.2d 1507, 1514 (11th Cir. 1990)).

BCBS argues that Defendants actively litigated this suit for months, showing a clear intention to waive their right to arbitrate any claims asserted in the Second Amended Complaint. (Resp. at 12.) BCBS explains that DL Investment even went so far as to argue in the Arbitration Proceeding that BCBS had waived its right to arbitrate claims under the PPO contract by filing the Second Amended Complaint.

(*Id.* at 9.) Specifically, BCBS explains that, several months after it filed the Second Amended Complaint, DL Investment moved in the Arbitration Proceeding to prevent arbitration of claims under the PPO contract and stating that "because Hospital Defendants prefer to resolve all claims in one forum," DL Investment "now seeks to litigate all claims between the parties in one lawsuit." *Arbitration Proceeding*, 1:18-cv-1116, ECF No. 19-1 at 11–12. DL Investment also argued that BCBS had waived its right to arbitration under the PPO contract "by affirmatively litigating the merits of its arbitrable claims to Chestatee's detriment." *Id.* at 13.

BCBS claims that Defendants only decided to change course and demand arbitration after the Court granted BCBS's motion for expedited discovery. (Resp. at 10.) BCBS explains that less than two weeks after it served its discovery, DL Investment made a complete about-face in the arbitration proceeding, withdrawing its opposition to BCBS's motion to compel arbitration on the PPO contract and abandoning its argument that BCBS had waived arbitration. *Arbitration Proceeding*, 1:18-cv-1116, ECF No. 18 at 1. Then, nearly six months after BCBS filed the initial complaint here, and despite having already moved to dismiss the Second

Amended Complaint, Hospital Defendants suddenly moved to compel arbitration of all claims asserted in the Second Amended Complaint. (Hosp. Defs.' Mot. to Dismiss, Dkt. 38; Mot. to Compel.) All the while, Defendants failed to produce the required discovery, leading to several calls with the Court and requiring a witness from one of the banks in possession of relevant discovery. After confirming the bank's ability to produce the records promptly, the Court ordered Defendants to produce the records to BCBS no later than November 14, 2018, ten business days following the November 1st teleconference. (Nov. 1 Tr. at 18:17–19:8). Rather than do as directed, Defendants filed their emergency motion for a stay of the discovery deadline, explaining that they would seek an order of mandamus from the Eleventh Circuit if not released from the production deadline. (Mot. to Stay at 13.)

The Court credits and adopts BCBS's factual allegations in their entirety. It is clear to the Court that Defendants seek to compel arbitration for the purpose of forum shopping, that is, to get out of this case and thereby avoid the pending discovery deadlines. The Court makes this finding based on the totality of Defendants' conduct, including flip flopping positions from first claiming that they wanted to litigate all

claims and that BCBS had waived its right to compel arbitration to suddenly claiming arbitration of all claims was mandatory — precipitated only by the Court's discovery orders. The Court also bases its finding on (1) Defendants' behavior in avoiding and unnecessarily delaying discovery, at one point claiming that it would take many weeks for the bank to produce necessary documents (a claim the bank witness denied), (2) the timing of Defendants' motion to compel arbitration many months after the initial filing of the complaint here, and (3) the desperate, eleventh-hour filing to stay their discovery deadlines. It is clear to the Court that Defendants are forum shopping to avoid the Court's discovery order.

Still, the Non-Signatory Defendants were not part of all this conduct. As they are not parties in the Arbitration Proceeding, they were not responsible for the inconsistent filings in that case seeking to avoid arbitration and then suddenly demanding it. While the same attorneys represent them, the Court does not interpret that as sufficient to hold them responsible for the inconsistent positions. In addition, the Court finds the Defendants' conduct is not sufficiently egregious to constitute a waiver of arbitration. The Eleventh Circuit has explained that, given the

preference for arbitration, participation in litigation must be substantial to waive the right to arbitrate. *Citibank, N.A. v. Stok & Assocs., P.A.*, 387 F. App'x 921, 924 (11th Cir. 2010). Plaintiffs invoked the litigation machinery, while Defendants have vigorously defended themselves at each step. The Court cannot say that by filing a defensive motion to dismiss and responding to Plaintiffs' offensive motions that DL Investment has substantially invoked the litigation machinery. *See S & H Contractors, Inc.*, 906 F.2d at 1514. And on the second prong of prejudice, this is not a case in which DL Investment sat quietly for years while the litigation continued before invoking its arbitration rights. The timing of the motion to compel arbitration — after the Court ordered expedited discovery — and the timing of the emergency motion to stay — on the eve of the deadline to turn over expedited discovery — certainly appears suspect. Yet all of this occurred in a rather short time-period. The Court, therefore, cannot say that DL Investment's delay in invoking arbitration sufficiently prejudiced Plaintiffs so as to waive any right to arbitrate. *See, e.g.*, *id.* at 1514 (finding prejudice after eight-month delay); *Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1544 (11th Cir. 1990) (finding prejudice and waiver after one year and eight-month

delay).  Given the presumption in favor of arbitrability under federal law, any party asserting a waiver of arbitration bears a heavy burden of proof. *Gutierrez*, 889 F.3d at 1236.  The Court acknowledges that Plaintiffs have expended considerable attorneys' fees and costs in pursuing this litigation.  But that alone is not enough to establish sufficient prejudice, particularly when some portion of this matter will continue in this forum.

### F.     Issuance of a Stay of Non-Arbitrable Claims

Defendants ask this Court to stay any action pending their appeal of an order denying arbitration or, alternatively, pending the outcome of the Arbitration Proceeding.  (Mot. to Compel; Mot. to Stay.)  The Court denies those requests.

#### 1.     Denial of a Stay Pending the Outcome of the Arbitration Proceeding

The Eleventh Circuit has held that "[w]hen confronted with litigants advancing both arbitrable and nonarbitrable claims, [district] courts have discretion to stay nonarbitrable claims." *Klay*, 389 F.3d at 1204.  Courts generally refuse to stay non-arbitrable claims "when it is feasible to proceed with the litigation." *Id.*  The "heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course." *Id.* (quoting *Dean Witter Reynolds, Inc.,* 470 U.S. at 225

(White, J., concurring)). "Crucial to this determination [whether the litigation can proceed] is whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend on the arbitrator's decision." *Id.*

The Court finds that it is feasible to arbitrate the claims identified above while allowing litigation of non-arbitrable claims to continue. Defendants contend that, because most of the money was paid under the PPO contract, the arbitrable claims predominate. (Tr. of Nov. 20, 2018, Hearing, Dkt. 118 ("Nov. 20 Tr.") at 46:19.) The Court disagrees. Although BCBS paid most of the money under the PPO contract, the parties agreed not to arbitrate most of the contracts. After all, two out of three contain no arbitration requirement. It is fundamentally unfair to the signatories to the PAR and HMO, who did not wish to arbitrate, to stay their claims because of the presence of an arbitration provision in a separate contract. (*See id.* at 51:7–20.) Staying the non-arbitrable claims is completely inconsistent with the purpose of arbitration or the idea that arbitration should be enforced because it is what parties agreed to do. (*Id.* at 51:10–12.)

BCBS also alleges that Defendants wrongfully took more than $8 million under the PAR and HMO contracts.[9] (Second Am. Compl. at ¶¶ 117–118.) Such a sum is not insignificant and certainly nothing to "scoff at." (Nov. 20 Tr. at 52:9–13 ("And [Hospital Defendants] would almost have a scoff at that, because the amount they defrauded us under the other contract is so enormous. $8 million dollars is at stake just under these two contracts . . . .")). The Court thus concludes that the arbitrable claims do not predominate.

There is also no reason to believe the outcome of the arbitration proceeding (if allowed to go first) will control the outcome of the litigation. Defendants argued that the arbitrator could make factual or legal findings that preclude issues in this case. Yet the arbitration provision in the PPO contract does not require findings of fact by the arbitrator or any other type of reasoned award. Any decision by the arbitrator will not necessarily have any bearing or legally preclusive effect on issues in this

---

[9] BCBS has since filed supplemental notice with the Court to adjust the totals allegedly paid to Hospital Defendants under each of the three contracts. (Pls.'s Additional Post-Hr'g Supp. Br., Dkt. 121.) Because the adjustments are minor and retain the same general ratios, the proposed changes do not affect the Court's analysis or conclusions in this order.

litigation. *See Delmay v. Paine Webber*, No. 87-8703, 1988 WL 167737, at *4 n.5 (11th Cir. 1989) ("These prerequisites [for issue preclusion] present considerable difficulties when the prior 'judgment' is an arbitral award, because arbitrators often give no written reasons for their decisions and indeed are discouraged from doing so to prevent litigation on the validity of their awards."), *vacated and appeal reinstated on other grounds*, 872 F.2d 356 (11th Cir. 1989).

In addition, there is no evidence that the PPO contract is identical to the HMO and PAR contracts or that the conduct (such as the alleged false representations made to BCBS) are the same. And, again, the parties are different. There are BCBS plans looking to assert their claims under the HMO and PAR contracts. Their claims will go on regardless of the outcome of arbitration under the PPO contract. Defendants cite no authority suggesting any rulings in the arbitration proceeding will decide issues in this case. The Court thus finds that any decision by the arbitrator will not necessarily preclude any of the non-arbitrable claims. (Nov. 20 Tr. at 28:12–18 ("It may be that they are similar and the scheme was similar, but an outcome on the PPO does not control the outcome on PAR and HMO . . . .")).

Certainly, there will be some overlap between the arbitration and the litigation proceedings. But they are both at the initial stages, and the Court is certain the parties can work together to prevent the duplication of efforts and expense. They can coordinate written discovery, depositions, and similar maters between the two proceedings. Indeed, BCBS has already committed to doing so. (*See* Pls.' Supp. Opp'n to Hosp. Defs.' Mot. to Compel and Mot. to Stay, Dkt. 116 at 4; Nov. 20 Tr. at 35:13–19.) The Court will also manage the litigation (including discovery and motions practice) to prevent duplication of efforts and maximize efficiency.

Considering the allegations at issue and the record before it, the Court finds that there is no reason to believe the dual track will prejudice any party or necessarily lead to the duplication of efforts. It is feasible to proceed with both at the same time. The Court also notes that a dual track is exactly what the parties bargained for when they decided to include an arbitration agreement in only one of the three contracts between them. To the extent there is common conduct or contractual obligations, the parties knew they might have to resolve disputes arising under the contracts in two different forums. It would be unfair to BCBS

to disregard this agreement by staying litigation, requiring BCBS to proceed with the arbitration, and then begin again at square one in the litigation.

For all of these reasons, the Court exercises its discretion to refuse Defendants' motion to stay the litigation pending arbitration of the claims related to the PPO contract. Both this litigation and the arbitration can and will proceed simultaneously, as the two actions are based on separate and distinct contracts. *See Dean Witter Reynolds, Inc.*, 470 U.S. at 221 (stating that proper enforcement of FAA might yield "piecemeal" litigation); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 (finding district court may order the parties to resolve "related disputes in different forums").

## 2. Denial of a Stay Pending Appeal of This Order

The Federal Arbitration Act "grants a party the right to file an interlocutory appeal from the denial of a motion to compel arbitration." *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251 (11th Cir. 2004) (citing 9 U.S.C. § 16(a)(1)(A)). And under Eleventh Circuit precedent, "pending resolution of a non-frivolous appeal from the denial of a motion to compel arbitration," a district court should stay proceedings before it.

*Id.* A district court, however, need not stay proceedings when the appeal is frivolous. *Id.* at 1252 (noting that "a stay need not be granted at the outset if the appeal is frivolous"). An appeal is frivolous when it is "without arguable merit in either law or fact." *See Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002) (citation omitted) (discussing frivolity in the context of *in forma pauperis* complaints).

The Court has granted Defendants' motion to compel arbitration of all claims that arise under or involve the PPO contract — claims against DL Investment pursuant to the PPO contract and claims against the Non-Signatory Defendants pursuant to the doctrine of equitable estoppel. The Court's ruling gives full force and effect to the federal policy favoring arbitration. The only claims on which the Court denies arbitration are those arising under the HMO and PAR contracts. The Court finds that an appeal of its order denying arbitration of those claims would be frivolous.

No legal authority allows DL Investment to compel BCBS to arbitrate the claims for breach of the HMO and PAR contracts when those contracts contain no arbitration agreement. The Eleventh Circuit has expressly held that "in the absence of an agreement to arbitrate, a

court cannot compel the parties to settle their dispute in an arbitral forum." *Klay*, 389 F.3d at 1200; *Seaboard Coast Line R.R. Co.*, 690 F.2d at 1352 (refusing to compel arbitration based on broad arbitration clause in license contract between parties when underlying claim was for breach of a separate lease contract lacking an arbitration clause); *see also Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) ("Arbitration under the [FAA] is a matter of consent, not coercion . . . ."). Counsel for Hospital Defendants conceded at oral argument that he could find no legal authority to support DL Investment's claim that arbitration of the HMO and PAR claims is required. (*See* Nov. 20 Tr. at 40:9–14 ("[I]n the PAR and the HMO, I think [counsel for Hospital Defendants] conceded he can't give me a case that indicates you can force two parties to arbitrate contract A and B simply because they've agreed to arbitrate in contract C.")).

The frivolity of an appeal regarding the claims against the non-signatories is even more stark. Defense counsel offered no caselaw to support the proposition that parties who never signed a contract — a contract that explicitly lacks an arbitration clause — should nevertheless be allowed to impute an arbitration clause from a separate and distinct

contract, to which they also were not signatories. And the Court has likewise been unable to find any. The doctrine of equitable estoppel simply does not apply in this situation. To assert that this appeal is not frivolous is to conclude that the Eleventh Circuit would make an unprecedented ruling by ordering arbitration of claims against parties, who never signed any of the contracts, for claims arising under a contract where the actual signatories specifically agreed not to arbitrate.

For all these reasons, the Court finds that any appeal of this order denying arbitration would be frivolous and thus declines the request for a stay.

## III.  Conclusion

The Court **DENIES** DL Investment's Motion to Compel Arbitration (Dkt. 93) with regard to Counts One, Two, Three, and Four of Plaintiffs' Second Amended Complaint (Dkt. 28).

The Court **GRANTS** DL Investment's Motion to Compel Arbitration with regard to Counts Five, Six, Nine, and Ten as to all claims arising under or relating to the PPO contract but **DENIES** the motion with regard to claims arising under or relating to the PAR and HMO contracts.

The Court **GRANTS** the Non-Signatory Defendants' Motion to Compel Arbitration with regard to Counts Five, Six, Seven, Nine, Ten, and Eleven as to all claims arising under or relating to the PPO Contract but **DENIES** the motion with regard to claims arising under or relating to the PAR and HMO contracts.

Further, the Court **DENIES** Hospital Defendants' Motion to Compel Arbitration to the extent is argues for the arbitration of claims against Defendant Jorge Perez.

The Court **DENIES** Hospital Defendants' Motion to Stay (Dkt. 93) the litigation pending resolution of the Arbitration Proceeding and its Motion to Stay pending appeal of the Court's denial of their motion to compel arbitration.

The Court **DIRECTS** Plaintiffs to file, within fourteen (14) days from the entry of this order on the docket, an amended complaint that specifically includes only those claims for which the Court has denied the motion to compel arbitration.

**SO ORDERED** this 14th day of December, 2018.

 

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE